DECISION AND JUDGMENT ENTRY
Appellant, Matthew M. Puda, filed this appeal from a March 17, 1999 judgment of the Ottawa County Municipal Court that appellant is guilty of a violation of
R.C. 4511.19(A)(3), driving under the influence of alcohol ("DUI"). Appellant has presented five assignments of error for consideration that are:
"ERROR NO. 1:
 THE COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS BECAUSE THERE IS NO EVIDENCE OF CALIBRATION OF THE BREATH TESTING MACHINE.
"ERROR NO. 2:
 THE COURT ERRED BY DENYING THE DEFENDANT DUE PROCESS OF LAW AND RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
"ERROR NO. 3:
 AS A MATTER OF LAW, THE PROCEDURES OF THE OHIO DEPARTMENT OF HEALTH IN THE PRESENT CASE CONSTITUTE AN ABUSE OF DISCRETION.
"ERROR NO. 4:
 THE COURT ERRED IN PUTTING THE BURDEN OF PROOF ON THE DEFENDANT TO PROVE AN ABUSE OF DISCRETION.
"ERROR NO. 5:
 THE DECISION OF THE COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The record shows that appellant was charged with DUI in the Ottawa County Municipal Court on June 1, 1997. Appellant filed a motion to suppress on July 18, 1997. In support of his motion he argued: 1) the officer who stopped him had no reason able, articulable suspicion to support the stop; 2) the officer had no probable cause to place him under arrest; 3) the BAC Datamaster used in his case was not properly calibrated; 4) the police department failed to keep required maintenance records relating to the BAC Datamaster; 5) the solution used to measure breath alcohol levels was not properly calibrated by the user police agency; 6) the Department of Health for the state of Ohio did not test an adequate sample of the batch solution used in his case to certify the accuracy of the alcohol level; and 7) all statements made by appellant at the time of the stop and arrest should be suppressed.
One ruling that appears in the record relating to the motion to suppress is a form that was stamped in the middle of a page at the close of the motion and just before the accompanying memorandum in support. The stamped form provides:
"MOTION GRANTED ______
MOTION DENIED ______
 ________________________________ Date Judge Frederick C. Hany II"
An x appears on the line after "MOTION DENIED". The handwritten date 11/20/98 and the judge's signature appear on the line above the typed words "Date" and "Judge Frederick C. Hany II". Just below that typed line is a handwritten notation that appears to read: "Balance of motion denied. Counsel/def. failed to appear."
On October 21, 1997, prior to the entry of the form stamp ruling just referred to on the motion to suppress, appellant filed a motion "to have the record and judgment of State ofOhio v. Brier adopted herein." In support of the motion, appellant said: "This motion is made to protect the Defendant's right with respect to the calibration batch solution and calibrations conducted herein."
The ruling on the motion to adopt the record and ruling from State v. Breier that appears in the record is again a stamped form that reads:
"MOTION GRANTED _________
MOTION DENIED _________
_______________________________
_________Date Judge Frederick C. Hany II"
This time, the form has an x written in on the line following "MOTION GRANTED". The date written in on the form is 10/22/97, and the judge's signature is also written on the form. The form ruling was journalized and filed on October 30, 1997.
Included in the record for this case is the "DECISION AND JUDGMENT ENTRY" that was filed on July 23, 1998 with the caption of:
STATE OF OHIO PLAINTIFF vs
CASE NO.'S
 RANDALL BREIER TRC-970041 A KEVIN TILL TRC-970910 A DAVID OBERLE TRC-970343 A RICHARD SELVA TRC-970415 A
AND
 "TIMOTHY MATTHEWS TRC-973640 A WILLIS DEEDS TRC-981844 A DEBRA WILSON TRC-980005 A MICHAEL OLSEN TRC-973336 A REBECCA SZERPICKI TRC-972674 A STEVE TAYLOR TRC-972597 A RUSSELL CLEVELAND TRC-971599 A JAMES DANIEL TRC-970766 A SCOTT EMERY TRC-973532 A TIMOTHY HARRISON TRC-972171 A NELSON LOZIER TRC-973883 A MATTHEW PUDA TRC-972051 A RENOLD WORKMAN TRC-972265 A LARRY BAUGHMAN TRC-973308 A JOSEPH HORNYAK TRC-973308 A SHAD GUNDERSON TRC-970892 A BELINDA DIETRICH TRC-974092 A WILLIAM C. WILSON CRB-971031 A MICHAEL BLAY TRC-980522 A JEFFREY FEARING TRC-972758 A STEPHEN McDOWALL TRC-972682 A JOHN KAMAN TRC-975720 A MARTHA PHILLIPS TRC-973647 A JIMMY COOK TRC-975707 A DAVID AUXTER TRC-980149 A DARYL HITES TRC-974938 A JASON BODAGER TRC-980033 A RICHARD HEIMBERGER TRC-974772 A SANDRA TARBUSKOVITCH TRC-975387 A GINGER KIRK TRC-975934 A JAY WEBB TRC-982859 A DAVID McLEAN TRC-980016 A JESSIE CALDWELL TRC-975924 A LUTFI KHARUF TRC-980723 A DELIAH ABBOTT TRC-980518 A
The text of the ruling and portions of the transcript from the hearing held in State v. Breier shows that the trial court heard facts from four cases relating to whether the police performed calibration test checks on the BAC Datamaster within seven days of the dates the defendants in those cases were given breath tests. The trial court also heard testimony from those same four cases relating to the methods used by the Director of the Department of Health for the state of Ohio to certify the calibration solution batch number 96130, that was used in each of the four defendant's tests. At the beginning of the hearing, the following exchange took place:
 "THE COURT: All right. We're here on the State of Ohio versus essentially, I guess, four Defendants here; State of Ohio versus Kevin Till, the State of Ohio versus Randall Breier, State of Ohio versus Richard Selva, and State of Ohio versus David Oberle, which we essentially have the same issue and the motion to suppress.
 "Before we get started, are there any pre trial motions or anything the Court needs to rule on?
 "MR. RUDES: Yes. Just an additional supplement for the record, that being that I've been advised by the court that other cases that we were going to consolidate would not be consolidated with this case, but those parties will be bound by the court's ruling as they are identical issues. I have some additional like six cases where 96130 batch solution is involved.
 "Also Attorney Randy Diggs is present, and he has a client who has been tested by a machine utilizing the same batch solution who would be bound by the determination of the court. He will be participating with me today.
 "THE COURT: Well, is this an understanding between the State and these other Defendants at a previous pretrial hearing or something?
 "MR. RUDES: This was an indication to me by the court that they would not be consolidating further cases, I think, just to keep the administrative and logistic thing down, be cause every time they do something, they have to send out notices to all the joint parties, and so that they would be not be consolidating the other cases with this.
 "THE COURT: Well, you know, I don't know. I've got these four cases in front of me. I have no idea what the other cases are involving. That certainly would make sense if they are the same issue that they would be bound. But, I mean, I can't really make a ruling on those cases. I don't have them in from [sic] of me. But we'll certainly note your opinion for the record.
 "MR. DIGGS: Okay, and if I could, Your Honor, I would simply note that as far as my clients go, we don't consent to be bound. But if that's the fact, then we're here.
"THE COURT: Okay. All right.
 "MISS SCHIETS: The State objects for the record to any participation of an attorney who is not an appearance in these four cases."
In a footnote in its ruling in all of the cases the trial court considered in conjunction with State v. Breier, including appellant's case, the trial court said:
 "The remaining cases involve Batch Nos. 97220, 97010, 96902. The parties have stipulated that the Director utilized the same methods of approval as he did in Batch No. 96130. Accordingly, each party through counsel request the matters be consolidated for determination of the identical issue."
Appellant subsequently entered a no contest plea, was found guilty by the trial court, and was sentenced. Appellant then filed this appeal.[1]
In support of his first assignment of error, appellant argues:
 "In the present case, the State did not call one witness or introduce any testimony of anyone who participated in the calibration of the subject breath testing machine. Since there was no testimony of any witness as to the procedure used to calibrate the breath testing machine the decision of the court was against the manifest weight of the evidence and contrary to law."
Appellee concedes that "Appellant's claim that there was no evidence introduced in the trial court of calibration of the BAC Datamaster testing machine is facially accurate * * *." Appellee argues that this fact alone "is not sufficient to support this appeal." Appellee says the calibration issue was the same in thirty-nine cases and "Appellant's case did not lose its own identity as a result of the consolidation."[2]
The ruling of the trial court following the hearing on the motion to suppress in State v. Breier, which included appellant's name and case number in the caption, contained several statements relating to the calibration testing of the BAC Datamaster. The trial court began by acknowledging that in Ohio, "the breath testing instrument must be properly calibrated within seven (7) calendar days prior to a particular test to be admissible as evidence." The trial court then recited facts from cases of four of the defendants listed in the caption of its ruling, (Breier, Till, Oberle, and Selva), that showed that a calibration test was done on the BAC Datamaster within seven days of the date each of those four defendants were tested for the alcohol level in their breath. The court said: "In each of the present cases, the calibration test checks occurred within seven (7) days of the particular test and fall within the accepted range of tolerance of 1/2 .005. * * * Accordingly, the court finds that the State has substantially complied with ODH regulations." (Citations omitted). It was in this portion of its ruling that the trial court included the footnote referred to above, in which it indicated that it was "consolidating" all of the cases for "determination of the identical issues." At the close of the ruling, the court said: "There is no evidence establishing that the present equip ment, application formula and batch solution employed have resulted in invalid testing results, or that the range variations are beyond acceptable probability levels."
From the record, it is clear that appellant did raise the issue in his motion to suppress that the BAC Datamaster used to give him a breath test was not properly tested. Equally clear is that the trial court never heard any testimony to show that the BAC Datamaster was tested within seven days of the date appellant was given a breath test. Instead, the trial court made a ruling, that applied to thirty-nine individual cases, that the state complied with the seven day testing requirement, when it only had before it testimony showing the facts in four of those thirty-nine cases. Appellant then asked for the record in his case to be supplemented with the record from State v. Breier so that he could preserve his right to challenge the ruling on calibration of the BAC Datamaster.
Because the trial court had no evidence before it to make a factual finding that the state did comply with the seven day testing requirement in appellant's case, the trial court's ruling on that issue as it applied to appellant was against the manifest weight of the evidence. The trial court could not take judicial notice of information he learned in one case and apply that information to a separate case. See Diversified MortgageInvestors, Inc. v. Athens County Bd. of Revision (1982), 7 Ohio App.3d 157,159. Because of due process rights found in theFourteenth Amendment to the United States Constitution and in Section 16, Article I of the Ohio Constitution and because of the lack of any evidence relating to appellant's case, appellant is entitled to a separate hearing in the trial court to consider his allegation that the BAC Datamaster was not properly tested by the police. Appellant's first assignment of error is well-taken.
In support of his second assignment of error, appellant says that he was denied due process of law when the trial court "consolidated" his case with State v. Breier and made a ruling in his case based only upon evidence that related to State v. Breier. Appellant was challenging the certification of calibration solution batch number 96130, the same calibration solution batch number about which testimony was presented in State v. Breier. Appellant says, however, that certain information became known only after the hearing on the motion to suppress in State v.Breier. Specifically, appellant argues:
 "In testimony in the Breier case with which the present case was consolidated, certain facts on the acceptance of calibration solutions were established. The State did not have access to the testing data of the manufacturer and was provided false information as to the testing that was actually conducted. This information was not discovered by the Department of Health, and was not therefore available to be discovered by the Defendant, until well after the Breier hearing was held. Although the motions may have been nearly identical and raised the same issues as in Breier, the information that had been discovered by the Department of Health and subsequently discovered by this defendant was vastly different than that available at the time of the Breier
hearing."
Appellant says he was denied the right of cross-examination, the right to call witnesses. He says:
 "The State was not required to put forth any evidence nor required to rebut any evidence presented by the Defendant. The defendant was never allowed to sit and hear any of the witnesses or see any of the evidence upon which the court would base the decision in his case. The defendant's counsel was never given a chance to artfully examine or cross examine the witnesses, to apply reason or logic to the evidence in oral or written argument on the evidence presented."
Appellee responds that: "The trial court made the determination that the issues presented in all of the `batch solution cases' were equivalent in nature and consolidated Appellant's motion for that reason." Appellee says the trial court did not abuse its discretion regarding the admission or exclusion of evidence. Finally, appellee says that the trial court's actions were taken in the interest of judicial economy, and did not violate appellant's rights to due process or effective assistance of counsel.
After extensive research, this court has failed to find any case law that exactly mirrors the situation in this case. The case with the closest set of facts was decided by the Eleventh District Court of Appeals in 1998. State v. York (May 1, 1998), Lake App. No. 97-L-037, unreported. In State v. York,id., a husband and wife were both charged with cruelty to animals. Each had separate counsel, and each filed a motion to suppress evidence. The husband asked the trial court to consolidate his motion to suppress with his wife's motion to suppress "for purposes of a suppression hearing." Id. The court granted the consolidation request with one limitation: The court specified "that only one defense attorney could actually ask questions of the witnesses, but allowed them to consult with one another during the examination." Id.
The trial court denied both motions to suppress at the close of the hearing, during which only the wife's attorney asked questions. The husband appealed, saying he was denied his constitutional rights to confront witnesses against him and to have the effective assistance of counsel.
The majority in State v. York indicated it was "troubled" by the trial court's actions in the case. The majority said:
 "Although our independent research did not uncover any cases which would support his contentions, we are troubled by the trial court's action in this regard. A criminal defendant is entitled to cross-examine the witnesses against him. Sixth Amendment to the United States Constitution; State v. Green (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253. Even though the trial court has the discretion to regulate the cross-examination, it may not do so in a way that hinders the Sixth Amendment right. Green at 147. However, appellant failed to enunciate in what way he was prejudiced by the court's limitation on cross-examination. He did not claim his attorney would have been a more effective examiner, nor did he claim his attorney requested [his wife's] attorney to ask certain questions, but was refused."
The majority therefore found that the husband's assignment of error lacked merit.
In a spirited dissent, Presiding Judge Ford noted that there are some circumstances that allow a trial court to limit cross-examination. Those reasons include: "`harassment, prejudice, confusion of the issues, the witness' [sic] safety, or interrogation that is repetitive or marginally relevant.'" Id. (Ford, P.J. dissenting) (quoting Delawarev. Van Arsdall (1986), 475 U.S. 673, 679). He suggested that none of those reasons were shown to exist in the record of Statev. York. Judge Ford then said: "In my view, the trial court improperly denied appellant's separate right to cross-examine the state's witnesses, and I am convinced that such denial was erroneous." Judge Ford continued his remarks by noting that the rights to confront witnesses and to cross-examine witnesses are central to the due process right to a fair trial. He said:
 "The import of the judge's decision is that cross-examination by one attorney in behalf of two separate defendants is just as good as two separate cross-examinations conducted by two different attorneys.
 "In my opinion, appellant's Sixth Amendment right of cross-examination cannot be subsumed within his co-defendant-wife's right under these circumstances. There are two separate rights extant here. Furthermore, the interests of the co-defendants are separate and distinct and justify the allowance of separate cross-examinations by their respective attorneys. `The Supreme Court of the United States has noted the importance of affording a defendant a full opportunity to effectively cross-examine opposing witnesses, including for the purpose of exposing the `possible biases, prejudices, or ulterior motives' of the witness. Davis v. Alaska
(1974), 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105.' In re Reid (May 19, 1987), Franklin App. Nos. 86AP-699, 86AP-700, 86AP-724, unreported.
"* * *
 "In the case sub judice, appellant was denied the opportunity to conduct his own, independent cross-examination and was forced by the trial court to rely primarily on the efforts of his co-defendant's attorney. Based on the adverse interest of the co-defendant, the trial court effectively denied appellant his right of cross-examination and the right to counsel. Although `consolidated' cross-examination does not constitute a total denial of cross-examination, it is not the type of independent cross-examination exercise to which appellant was entitled, particularly in the absence of any substantial and meritorious reason for requiring consolidated cross-examination. The right of a criminal defendant to independently cross-examine the prosecution's witnesses is too important to be summarily dismissed by a trial court for what appears to be an undue emphasis on expediency and/or time constraints without stating any other substantive basis. I have been unable to locate any legal authority stating that expediency or convenience, alone, and without any other substantive evidential basis, constitute appropriate grounds for the denial of a criminal defendant's right of separate cross-examination.
 "Furthermore, there is no evidence in the record that appellant expressly waived his cross-examination right. Submission to the trial court's directive regarding the singular approach to cross-examination in the consolidated suppression hearing was not tantamount, in my view, to a waiver of the fundamental right to confront and cross-examine witnesses in his own behalf.
"* * *
 "I do not believe that the error in the second assignment is harmless because appellant was effectively denied his fundamental right to conduct cross-examination, and the record contains no valid evidential reason for forcing him to rely on his co-defendant's cross-examination. The only basis for the consolidated cross-examination appears to be the trial court's convenience. The criminal defendant's right to cross-examination during a suppression hearing is patently important since the evidence elicited at this early stage of the criminal proceeding is frequently determinative of the outcome of the entire case. For example, under different circumstances, the loss of the right to separate cross-examination may force a guilty plea. The method employed here based on the underlying circumstances in the record rises, in my opinion, to the level of plain error." Id. (Ford, P.J. dissenting).
 We agree with the reasoning expressed in the dissent in
State v. York. We find it especially compelling in our case, where appellant's trial counsel was not even given the same limited role the husband's attorney had in State v. York. Specifically, in State v. York, the husband's attorney was given the opportunity to consult with the wife's attorney during the hearing and to submit questions for the wife's attorney to ask of the witnesses. In this way, the husband's attorney in State v.York had some limited input into the strategy followed and questions asked.
In the case at bar, the record shows that only two attorneys were permitted to consult with one another and to ask questions at the hearing on the motion to suppress in State v.Breier, and neither of those attorneys represented appellant. The statements made by the counsel in State v. Breier at the beginning of the hearing are not sufficient to establish that the trial counsel for any of the other defendants, including appellant, agreed to "consolidate" their case with State v. Breier (or to be "bound" by the ruling in State v. Breier), that they agreed to waive cross-examination on behalf of their clients, or that they agreed to let counsel for Breier to in effect become counsel for all of the defendants on the calibration issues. (Indeed the only other attorney to speak said his clients did not consent to be "bound" by the State v. Breier proceedings). The procedure followed by the trial court in this case effectively resulted in appellant being represented by counsel other than his own.
Appellee has not argued that appellant failed to preserve his arguments for appeal, but even assuming arguendo that his statements in the trial court were not sufficient to alert the trial court to his contention, we find that the procedure followed by the trial court rises to the level of plain error in this instance, see Crim.R. 52. Key due process rights were denied to appellant because of the procedure followed, and he was prejudiced by the failure to provide him with a separate hearing and an opportunity to confront and to cross-examine witnesses. Appellant's second assignment of error is well-taken.
Our disposition of the first and second assignments of error render the remaining assignments of error moot. The judgment of the Ottawa County Municipal Court is reversed and this case is remanded for further proceedings, including a separate hearing on appellant's motion to suppress to consider his calibration arguments. Appellee is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] When we review the above information in a time line, we see that the procedure in this case took place as follows:
 1) appellant filed a motion to suppress raising several issues, including the validity of the certification of the calibration batch solution used to test the level of alcohol in his breath; 2) the trial court held a hearing regarding a motion to suppress in another case where four defendants were challenging the testing of the BAC Datamaster used to give them breath tests and the certification of the calibration batch solution used in their cases and heard evidence relating only to those four defendants; 3) the trial court denied the motion to suppress in the four cases for which he heard evidence, and filed the same ruling in other pending cases; 4) the trial court noted in its ruling that the evidence it heard related to only one batch number of calibration solution, but said in a footnote that other litigants challenging the accuracy of other calibration solution batches had "stipulated" to a "consolidation" of the cases on the mutual issue of whether or not the procedures used by the state to certify the batches were legally adequate; 5) appellant then asked to have the record from the other case to be included in his case so he could protect his right to appeal the rulings on calibration issues; 6) the trial court granted the request to include the record from the other case in this case; 7) appellant waived the remaining issues in his motion to suppress by not appearing at a scheduled hearing; 8) the trial court denied the remainder of the motion to suppress because of appellant's waiver; 9) appellant entered a no contest plea to a violation of R.C. 4511.19(A)(3); 10) the trial court found appellant guilty of driving under the influence of alcohol and sentenced appellant; 11) appellant then filed this appeal.
[2] Even though the trial court referred to a "consolidation" of the cases in a footnote of its decision, we conclude that no true consolidation actually occurred, since no formal consolidation order appears in the record.